IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JIM WADE SALE, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:10-CV-1720-N |
| § | |
| GAB ROBINS NORTH AMERICA, INC., § | |
| § | |
| Defendant. § | |

# **ORDER**

This Order addresses Plaintiff Jim Wade Sale's motion to alter or amend final judgment [17]. Sale requests that the Court reconsider its order granting Defendant GAB Robins North America, Inc.'s, ("GAB") motion to dismiss and corresponding final judgment. *See* Order of Feb. 10, 2011 [15]; Final J. [16]. The Court denies Sale's motion. The Court substitutes this Order for its Order of February 10th, which it withdraws. For the reasons that follow, however, the Court concludes that it correctly granted judgment in GAB's favor and denies Sale's request to alter or amend judgment.

## I. ORIGINS OF SALE'S UNPAID COMPENSATION CLAIM

Sale worked as a regional sales manager for GAB from October 2007 to January 2010. In that capacity, Sale sold property loss adjusting services to insurers and other customers spread across a multistate area. GAB compensated Sale through, among other things, a base salary and certain performance-based incentives. From 2008 on, Sale's performance

incentives were governed by GAB's "LAS Sales Incentive Compensation Plan" (the "Plan"). *See* Compl. Ex. A [1].

The Plan consisted of two components. The first component (the "Sales Growth Component") allowed GAB employees like Sale to earn commissions in the form of an annual award and quarterly payments based on growth in "territory base revenue." *Id.* To be eligible for commissions under the Sales Growth Component, an employee's "assigned territory base revenue [must have] grow[n] more than 4%" over the previous year's revenue. *Id.* The Plan's second component (the "Catastrophe Component") paid a commission of "1% of the revenue associated with [certain] catastrophe[s]," which the Plan defined as "extraordinary weather events with an ISO CAT code assigned and with revenue of $1,000,000 or more . . . [as] designated by the President of GAB." *Id.*

In 2008, Hurricanes Dolly and Ike caused damage in Sale's service region. GAB designated both storms as catastrophes under the Plan. GAB temporarily assigned Sale to perform some hurricane-related loss adjusting in addition to his normal sales duties. As part of that assignment, Sale reviewed claim files for the Texas Windstorm Insurance Association and did other tasks related to servicing accounts for the Texas Fair Plan Association and Wellington, all preexisting GAB clients (the "Texas Accounts").

Based on GAB's hurricane-related revenue, Sale calculated that GAB owed him a commission in the amount of $153,008 under the Plan's Catastrophe Component. *See id.*; Admin. Record at 143 (email from Sale to Jim Girard titled "Bonus Owed") [24]. GAB, however, paid Sale what it characterized as a discretionary bonus of only $11,250 in April

2009. GAB reasoned that Sale was ineligible to claim commissions for revenue related to the Texas Accounts because those accounts were with institutional clients that predated Sale's arrival. In GAB's view, Sale's work "had nothing to do with 'bringing [the Texas Accounts] to the table.'" *Id.* at 102 (Sale's response to GAB's initial rebuttal letter). Sale complained about the discrepancy at the time, but "chose not to fight for what was owed [to him] because [he] feared losing his job." *Id.* Around the same time, a GAB executive informed Sale that he no longer serviced the Texas Accounts. *Id.*

Sale's compensation disputes with GAB continued. At the end of 2009, Sale calculated that GAB owed him a quarterly bonus of $3396 and an annual bonus of $9985 under the Plan's Sales Growth Component. Sale based his calculations on his "Non-Weather" accounts generating 9.29% more revenue than they had in 2008. *See, e.g.*, *id.* at 162. GAB again denied Sale's purported eligibility for additional compensation, this time because Sale's "total actual revenue for his assigned territory" failed to exceed the four percent growth under the Plan. *Id.* at 96 (Ferugheli Decl.).

Sale quit. He then filed a complaint with the Texas Workforce Commission ("TWC") on February 9, 2010, arguing that GAB failed to pay him "$155,139+" in commissions due to him under the Plan for the period "July 2008 to January 2010." *Id.* at 138-40 (Sale's TWC Wage Claim). Sale calculated that GAB owed him that amount by adding the amount of unpaid commissions under both Plan components and then subtracting the putative discretionary bonus paid to him in April 2009. The TWC hearing officer concluded that Sale was "not entitled to" either "155,139.00 for unpaid commissions" or "13,381.00 for unpaid

bonuses." *Id.* at 83 (TWC Preliminary Wage Determination Order). That conclusion was "[b]ased on the written or oral policy or agreement, and/or work records provided." *Id.* The order, however, noted that the officer lacked "jurisdiction to rule on part of the unpaid commissions because the wages [claimed] were due for payment more than 180 days prior to the filing of the wage claim." *Id.*

Sale then filed this suit for breach of contract, unjust enrichment, and promissory estoppel. GAB moved to dismiss based on *res judicata* arising out of the prior administrative proceeding. The Court granted the motion and entered final judgment in GAB's favor. Sale now moves for reconsideration. At the Court's request, Sale submitted the TWC administrative record. The Court now reconsiders its reasoning below, but declines to alter its judgment.

## II. RULE 12(B)(6) STANDARD

When faced with a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). According to the Supreme Court, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face," i.e., "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). A plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief

above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (internal citations omitted).

As the Supreme Court recently observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. [*Iqbal v. Hasty*,] 490 F.3d 143, 157-158 [(2d Cir. 2007)]. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 129 S. Ct. at 1949-50.

In ruling on a Rule 12(b)(6) motion, the court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Courts

may also reference materials attached to the pleadings, including documents attached to a motion to dismiss so long as they "are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (reasoning that "[i]n so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated") (internal quotation marks, citation, and footnote omitted).

### III. *RES JUDICATA* AND COLLATERAL ESTOPPEL BAR THIS ACTION

Sale filed his TWC wage claim under the Texas Payday Law. *See* TEX. LAB. CODE §§ 61.051, *et seq.* The Payday Law allows plaintiffs to proceed in one of two fashions: They can, like Sale, file a wage claim with the TWC. Alternatively, they may file suit in court.

Until fairly recently, however, a plaintiff's decision to take the TWC route effectively limited the plaintiff to recovery only on unpaid wages due within 180 days of filing a wage claim. In *Igal*, the Supreme Court of Texas held that, if a plaintiff opted for the TWC process, he was barred from later seeking unpaid wages that the TWC dismissed as untimely brought outside the 180-day window. *See Igal v. Brightstar Info. Grp., Inc.*, 250 S.W.3d 78 (Tex. 2008). The Texas Legislature subsequently amended the Payday Law to clarify that its requirement that wage claims be filed no later than 180 days "after the wages claimed became due for payment . . . is a matter of jurisdiction." TEX. LAB. CODE § 61.051(c); *see also* TEX. LAB. CODE § 61.052(b-1) (providing that TWC examiners "shall dismiss" wage claims brought outside the 180-day requirement "for lack of jurisdiction"). In doing so, the

Texas Legislature partially abrogated *Igal* by preserving a plaintiff's right to recover unpaid wages that the TWC may lack jurisdiction to consider.

To that end, Sale filed this action, substituting three common law claims in place of his Payday Law claim. Sale contends that the prior administrative proceeding does not bar his new claims. Although the TWC order facially suggests otherwise, Sale insists that the TWC lacked jurisdiction to consider $155,139 in unpaid Plan commissions – the "exact amount," Sale repeatedly emphasizes, "sought . . . in this case." *See, e.g.*, Sale's Resp. to GAB's Mot. to Dismiss at 2 [5].

The Court disagrees for two reasons. First, both Sale's calculation sheet included with his complaint and the administrative record establish that he seeks funds allegedly owed to him within 180 days of the date he filed his TWC wage claim. As noted above, Sale's Payday Law claim concerned wages from as late as January 2010, and he filed a wage claim on February 9, 2010. The claim of necessity included the $13,381 in allegedly unpaid Sales Growth Component commissions, which Sale could not have calculated until his 2009 revenue numbers were finalized. Sale's records also show that he sought $153,008 in commissions allegedly due him under the Plan's Catastrophe Component.

The TWC thus had jurisdiction to rule upon at least some portion of Sale's Payday Law claim. Even if the Court assumed that Sale's sought-after Catastrophe Component commissions were entirely outside of the TWC's jurisdiction and that Sale seeks that full amount again here – he does not specify that he seeks only hurricane-related commissions – that still leaves $2131 in commissions that Sale seeks here but that are traceable to Sales

Growth Commissions over which the TWC had jurisdiction. But, because Sale failed to administratively appeal the TWC ruling in GAB's favor, TEX. LAB. CODE § 61.054, the Payday Law makes that decision final and bars it from judicial review. TEX. LAB. CODE § 61.055; *see also Igal*, 250 S.W.3d 78; *Hull v. Davis*, 211 S.W.3d 461 (Tex. App. – Houston [14th Dist.] 2006, no pet.). Thus, the prior administrative proceeding is *res judicata* with regard to that portion of Sale's claims for unpaid commissions that were timely brought before the TWC.

Second, the administrative record shows that the TWC resolved a factual issue critical to Sale's ability to obtain recovery in this action. Although Sale demands $155,139 here, Sale clearly emphasized in his wage claim before the TWC that he sought more than that amount. Besides indicating that GAB owed him "$155,139+," Admin Record at 138, Sale provided in the wage claim's "additional comments" section: "I have stated that I am owed $155,139, however, sales records were not available to me on a regular basis. Commissions owed may be much greater than the amount above." *Id.* at 140. That representation comports with his demand letter to GAB, in which he threatened that the "[TWC] will obviously find that GAB owes [him] for the numbers in the worksheet,[1] as well as on the revenue generated after May 1, 2009." *Id.* at 143. Crucially, Sale based that claim on the premise that GAB wrongfully excluded the Texas Accounts in calculating his commissions. *See id.* at 143-45 (noting that the unpaid amount was greater than reflected in Sale's

---

[1] The "numbers reflected in [Sale's] worksheet [were] based on numbers prior to May 1, 2009." Admin. Record at 143.

worksheet because GAB owed those amounts plus additional "revenue generated after May 1, 2009, since no written cancellation of [the Texas Accounts] was ever sent" to Sale).[2]

The question of whether GAB was obligated to credit Sale for his work on the Texas Accounts played prominently in the TWC proceeding. And, the TWC hearing officer found against Sale on the issue. In the hearing officer's "Investigation Documentation Worksheet," the officer provided as part of his "Ruling/Justification" that

> [Sale] was due Commissions for new business revenue generated directly (by [Sale]) and associated with [Sale's] individual initiative. [Sale] worked on temporary reassignment for "catastrophic loss adjusting duty" which is referenced in [Sale's] Employment Agreement. [Sale] worked on major accounts which had been with the company for years before [Sale] was hired by the company. [Sale] did not generate new business revenue directly as required under the Commission Agreement. Dozens of other employees worked on "Catastrophic loss adjusting duty" and were not paid for Commissions because the work (revenue) was not personally generated or from individual initiative.

*Id.* at 80. Notably, the hearing officer described his decision as a "[r]uling for Employer to dismiss the claim." *Id.* The hearing officer concluded that Sale was not entitled to claim the Texas Accounts and thus resolved an issue that cuts across even those portions of Sale's claim over which this Court might otherwise have jurisdiction; Sale is precluded from relitigating that issue here by collateral estoppel.[3] *Cf. Thakkar v. Balasuriya*, 2009 WL

---

[2]Sale noted again in his rebuttal statement that "the revenue data that I based the commissions owed me is incomplete, and I believe much greater." Admin. Record. at 103.

[3]Although the TWC order noted that the officer lacked jurisdiction to rule on a portion of the allegedly unpaid commissions, the officer associated that amount with commissions related to the Sales Growth Component. The officer would have had jurisdiction over at least some portion of those commissions. *See* Admin. Record at 80. Even if the officer incorrectly ascribed those commissions to the Sales Growth Component, he gave no

ORDER – PAGE 9

2996727, at *8 (S.D. Tex. 2009) ("The court's conclusion – that the TWC's findings that Thakkar did not work any overtime hours and was paid for all the hours that he worked are entitled to preclusive effect – is fatal to the FLSA claims that Thakkar has alleged in the instant action because in order to prevail on those claims Thakkar must prove that he worked overtime hours for which he was not compensated."). Absent any claim for compensation for the Texas Accounts, Sale has no factual basis for recovery before this Court.

## CONCLUSION

For the above reasons, Sale's claims are barred. Accordingly, although the Court reconsiders its reasoning, it declines to alter judgment.

Signed September 9, 2011.

_____
David C. Godbey
United States District Judge

---

indication that he lacked jurisdiction over an amount substantially similar to that Sale seeks here. To the extent Sale believes that the hearing officer ruled on commissions that he lacked jurisdiction to render a decision upon, Sale should have appealed that decision. Because he did not, this Court lacks jurisdiction to alter any merits decision rendered in the TWC proceeding. *See* TEX. LAB. CODE § 61.054-.055.